Reben Eugene **HILL**, Appellant,

v.

**STATE of Texas**, Appellee.

No. A14–81–679CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 11, 1983.

Randy Schaffer, Houston, for appellant.

James C. Brough, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

OPINION

ELLIS, Associate Justice.

This appeal is from a judgment of conviction for the offense of burglary of a build-

ing with the intent to commit theft. The appellant, Ruben Eugene Hill, was found guilty by a jury. The indictment included two enhancement allegations of two prior felony convictions. The jury found that the two enhancement allegations were true, and an automatic life sentence was imposed by the trial court. TEX.PENAL CODE ANN. § 12.42(d) (Vernon 1974). Appellant brings three grounds of error. We sustain appellant's third ground of error and reverse and remand.

The record reflects that Margaret Salvato, the State's only eyewitness, resided in an apartment behind the Panamexico Travel Agency which was owned by Dorothy Walsh, the complainant. She testified that at 8:00 a.m. on April 27, 1981, she was walking with her son toward her car when she observed the appellant, partly in the window of the Panamexico Travel Agency. She said that appellant seemed to realize that she and her son were there, that he looked at them and then appeared to speak to someone inside the building. Mrs. Salvato and her son continued to walk to her car. Mrs. Salvato noticed an old Mercury automobile that was parked at an angle within a parking space. She obtained the license number of that car and observed two men who resembled each other inside the Mercury at the front of the apartment complex. She got into her car and drove to a phone, called the police, and gave them the license number and description of the car and suspects.

H.C. Nichols, a Houston police officer, testified that he checked the registration on the license number furnished by Mrs. Salvato and learned that it was registered to a 1971 Mercury, owned by Richard Hill, brother of the appellant. On May 7, 1981, he took a photo spread to Mrs. Salvato and, as a result, Richard Hill was arrested. On May 18, 1981, he showed an additional photo spread to Mrs. Salvato and she identified a photograph of appellant.

Dorothy Walsh testified that on April 27, 1981, her office was entered without her consent during a time her office was not open to the public. She observed that the two rear windows were open and an adding machine which was on her desk had been removed.

The testimony of appellant's witnesses reflects the following. Jeanine Hill, wife of Richard Hill, testified that on April 27, 1981, she and Richard went to the apartment complex where the travel agency is located to visit her sister. Her sister was not at home. She and Richard then had an argument and she ran away from Richard, running toward the rear of the complex. She climbed in an apartment window to get away from Richard. She entered the apartment which appeared to be a business of some sort. She stayed inside for about five minutes until Richard came to the window and told her to get out. As she and Richard left the apartment to get to their car, she saw a lady, whom she identified as Mrs. Salvato, and a man. She stated that the appellant was not with them at the time of the entry. Thurman Stapleton, manager of the Memorial Park Hotel, testified that on April 27, 1981, there was a fire in room 207 at about 3:00 a.m. This was the room where appellant was staying. He went to the room at about 3:00 a.m. and spoke with appellant. At 10:00 a.m. he again went to the room and asked appellant to leave the motel. He stated that during the several days appellant stayed at the motel, he had observed a man and two women visiting appellant. He also observed a 1971 Mercury on the motel premises, and acknowledged that the man and women who owned the car had visited appellant's room during his stay there. Laydonia Busby, the housekeeper at the Memorial Park Motel, testified that on April 27, 1981, she arrived for work at 8:00 a.m. At about 8:30 a.m. she went to appellant's room. Appellant answered the door and said that he did not want any maid service. On cross-examination, she admitted that she could have knocked on the door at any time between 8:30 a.m. and 10:00 a.m.

Appellant, who had prior convictions for robbery, delivery of marijuana, and compelling prostitution, testified as to his alibi. He stated that on April 27, 1981, he was

staying at the Memorial Park Motel. There was a fire in his room and his clothes were burned. The manager came to his room between 3:00 and 4:00 a.m., after which he went back to sleep. The maid came to his room between 8:00 and 9:00 a.m., and later the manager came and tried to get him to leave the motel. He resisted leaving because he had no clothes or money. Later that afternoon, a friend brought him some clothes and he left the motel. Appellant stated that he had not left the motel that morning, and denied that he went to the apartment complex where the travel agency was burglarized, or that he committed the burglary. The appellant also testified that he had been convicted of one prior misdemeanor and two felonies during his life time.

In his third ground of error, appellant contends that the trial court erred in permitting the prosecutor to argue to the jury that the State's eyewitness, Mrs. Salvato, did not have a criminal record. We agree, and reverse and remand for a new trial. Mrs. Margaret Salvato was the only eyewitness who identified the appellant to connect him to the burglary of the travel agency. When she testified, Mrs. Salvato was never asked if she had a criminal record.

■ During final arguments of the guilt or innocence phase of the trial, the prosecutor argued as follows:

"Now, you have got all the evidence that you need to convict him of this offense. You either believe this woman who is sitting here [Margaret Salvato] and came to tell you what she saw, never been convicted of anything—"

MR. CALDWELL: "Your Honor, I am going to object to that. There is no evidence regarding her criminal record in here."

THE COURT: "Be overruled."

MR. CALDWELL: "Note our exception."

MS. LONGORIA: "Or you can believe a two-time ex-con. It is your choice. You can either put him where he belongs or you can ride down the elevator with him."

Appellant contends, and we find, that this unsworn statement by the prosecutor stating that her only eyewitness (Mrs. Salvato) to the burglary has a clean criminal record, was improper and harmful to the appellant in that it bolstered the credibility of the State's only eyewitness. The prosecutor then compared Mrs. Salvato's credibility, because of the absence of a prior criminal record, to the lack of credibility of the appellant, who was a two-time ex-con.

There was no evidence concerning Mrs. Salvato's lack of a prior record. This unsworn testimony of the prosecutor injected new and harmful facts which were unsupported by evidence and improperly bolstered her credibility. *Thomas v. State,* 519 S.W.2d 430 (Tex.Cr.App.1975).

■ The Court of Criminal Appeals has on many occasions condemned any effort on the part of the State to bolster the credibility of its witnesses by unsworn testimony. *Brown v. State,* 165 Tex.Cr.R. 535, 309 S.W.2d 452 (1958); *Caka v. State,* 165 Tex. Cr.R. 35, 302 S.W.2d 939 (1957); *Womack v. State,* 160 Tex.Cr.R. 237, 268 S.W.2d 140 (1954); *Gonzales v. State,* 159 Tex.Cr.R. 108, 261 S.W.2d 577 (1953); *Moynahan v. State,* 140 Tex.Cr.R. 540, 146 S.W.2d 376 (1941). Where the bolstered witness was the only witness who could identify appellant as the person who committed the offense, and the credibility of this witness was critical to the trial of this case, it is not harmless error. *Menefee v. State,* 614 S.W.2d 167 (Tex.Cr.App.1981). This expression of the prosecutor's opinion was not a deduction from the evidence, but was instead an effort to bolster Mrs. Salvato's credibility by unsworn testimony. Accordingly, appellant's third ground of error is sustained.

Since appellant's third ground of error is dispositive of this case, we will not take the liberty to address appellant's other grounds of alleged error.

The trial court's judgment is reversed and the cause remanded for a new trial.